STATE OF NEBRASKA, APPELLEE, v. PATRICK J. GREEN, APPELLANT.
470 N.W.2d 736

Filed June 7, 1991.   No. 90-454.

James C. Stecker for appellant.

Robert M. Spire, Attorney General, and Barry Waid for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Patrick J. Green appeals his convictions for what is commonly called third-offense drunk driving and for third-offense refusing to submit to a test to determine his alcohol content. The violations were alleged to have occurred on March 19, 1989. We affirm in part and in part reverse and remand with directions.

Green was also charged in the county court for Platte County with refusal to submit to a preliminary breath test and with two counts of criminal mischief. However, the State dismissed one of the criminal mischief charges and the count for refusal to submit to a preliminary breath test. The jury found Green not guilty of the remaining criminal mischief charge.

Green's seven assignments of error consolidate to allege that the trial court erred in (1) finding that he had voluntarily, knowingly, and intelligently waived his right to counsel; (2) failing to appoint an attorney to serve him as standby counsel; (3) permitting him to introduce evidence of his prior misconduct; (4) finding that the evidence was sufficient to support his convictions; (5) finding that his prior convictions were valid for enhancement purposes; and (6) that his sentences were excessive.

Green represented himself at all stages of the proceedings. Following presentation of the case to the jury on June 29 and 30, 1989, Green was convicted of operating a motor vehicle while under the influence of alcoholic liquor and of refusal to submit to a chemical test of his blood, breath, or urine to determine alcohol content.

After an enhancement hearing held on July 10, 1989, the trial court determined that Green had been convicted on at least two prior occasions of each of the offenses of which he was found guilty. Sentences were imposed on July 25, 1989. On each conviction, Green was sentenced to a 6-month term of imprisonment, the sentences to run consecutively, and fined $500, and he was ordered not to drive any motor vehicle for any purpose for 15 years and his driver's license was revoked for the same period. The sentencing order was filed on July 27, 1989.

Green timely appealed to the district court for Platte County, which affirmed the county court's judgment. Green timely appealed to this court from the district court. Green was represented by counsel in both his appeal to the district court and his appeal to this court.

## I. WAIVER OF COUNSEL

At a group arraignment on April 4, 1989, the county court for Platte County informed Green that he had the right to have an attorney represent him at all critical stages of the proceedings and that if his offense carried the possibility of imprisonment, he had the right to have a court-appointed attorney represent him at no expense if he could not afford an attorney. Green was further advised of certain other statutory and constitutional rights. The court individually informed Green of the nature of the charges and the possible penalties, including the enhanced penalties for third-offense operating a motor vehicle while under the influence of alcohol and for third-offense refusal to submit to a chemical test to determine the alcohol content in his blood, breath, or urine. Green advised the court that he understood the nature of the charges and the possible penalties. He told the court that he had sufficient funds to hire an attorney and requested a 2-week continuance so that he could determine whether to hire counsel or proceed on his

own. The court granted a continuance until April 18, at which time Green was to enter his pleas.

When Green appeared before the county court on April 18, the court asked him if he had had an opportunity to speak with an attorney. Green said that he had spoken with a few attorneys in Platte County, but that "they were so wrapped up in this mysterious web that has been weaved in this local area, that I could not honestly with full faith, go in and give one of those people some of my lucre." He requested another continuance so that he could drive to Lincoln or Omaha to hire an attorney. After the court remarked that 2 weeks seemed a sufficient period of time in which to hire a lawyer from Lincoln or Omaha, Green responded, "I have more in my life to do than worry about my court cases." The court refused the continuance and entered pleas of not guilty for Green. At that point, Green stated, "I'm sure the Supreme Court will enjoy that." At the conclusion of the hearing, the court told Green that if he had counsel, his attorney could attend a pretrial conference, or if he did not have counsel, he personally could attend the conference.

On May 22, Green appeared pro se at the pretrial conference. Since Green had earlier requested a jury trial, the court scheduled Green's trial for June 29. As stated, Green thereafter represented himself at all stages of the proceedings.

In his first assignment of error, Green claims that at a minimum, a trial court must advise a defendant of the dangers and disadvantages of self-representation. Without this warning, Green contends, there can be no voluntary, intelligent, and knowing waiver of a right to counsel.

The sixth amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." If an indigent defendant is to be imprisoned upon conviction, he or she has a right to be represented by counsel at trial, regardless of whether the offense for which he or she may be imprisoned is classified as petty, misdemeanor, or felony. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972). See, also, Neb. Rev. Stat. § 29-3902 (Cum. Supp. 1990) (statutory right to counsel for felony defendants and

misdemeanants who may be punished by imprisonment). A criminal defendant may proceed pro se and forgo his or her right to counsel, but the waiver of that right must be made knowingly and intelligently. *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Accord *State v. Morford*, 192 Neb. 412, 222 N.W.2d 117 (1974) (an accused may waive his or her right to counsel when such waiver is made intelligently and understandingly, with knowledge of the right to counsel). The State has the burden of establishing a valid waiver of a defendant's sixth amendment right to counsel. *Michigan v. Jackson*, 475 U.S. 625, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986). In *Brewer v. Williams*, 430 U.S. 387, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977), the Supreme Court cautioned that every reasonable presumption against waiver must be indulged.

In *Faretta, supra* at 422 U.S. at 835, the Court explained:

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with his eyes open." [Citation omitted.]

While the Supreme Court has not laid down a hard-and-fast rule requiring a ritualized warning, a fair reading of *Faretta, supra*, leads to the conclusion that the Court strongly suggests that a defendant be warned of the pitfalls of self-representation. This conclusion is supported by the Court's declaration in *Patterson v. Illinois*, 487 U.S. 285, 108 S. Ct. 2389, 101 L. Ed. 2d 261 (1988), that the constitutional minimum for determining whether a waiver is knowing and intelligent is that the accused be made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forgo the aid of counsel.

Not only does a warning protect a defendant's constitutional rights, but it also serves a practical function. First, such a warning facilitates resolution of the conundrum with which trial courts are faced. An overprotective trial court which refuses to allow a defendant to jeopardize his or her own

defense by proceeding pro se risks violating the defendant's right to self-representation as guaranteed by *Faretta, supra*. Conversely, a trial court that does not warn a defendant of the dangers of self-representation may be subject to an appeal on the ground that the waiver of counsel was not knowingly and intelligently made. A warning lessens the risk of reversible error on either of those grounds. Furthermore, a warning on the record would relieve an appellate court from searching through the entire record to determine whether the waiver was knowingly and intelligently made when the question could be answered by reference to a relatively short and simple colloquy on the record. See *Meyer v. Sargent*, 854 F.2d 1110 (8th Cir. 1988).

That said, we disagree with Green that a formalistic litany is required to show a knowing and intelligent waiver of the right to counsel. Instead, we adopt a more flexible approach and hold that a trial court should warn a defendant who has the right to counsel of the dangers and disadvantages of self-representation, but that the warning is not required. See, e.g., *Meyer, supra*. As the following discussion demonstrates, it is nonsensical to reverse Green's convictions because of the absence of an on-the-record warning when the record viewed as a whole demonstrates a knowing and intelligent waiver of his right to counsel.

Green was apprised of his right to counsel and the right to court-appointed counsel in the case of indigency. The fact that Green was not later informed of his right at each proceeding is inconsequential. Once a defendant is informed of the right to retained or appointed counsel, there is no requirement that the court advise the defendant on each subsequent court appearance of that same right. *State v. Dyke*, 231 Neb. 621, 437 N.W.2d 164 (1989); *State v. Tharp*, 224 Neb. 126, 395 N.W.2d 762 (1986). It is further noted that a knowing and intelligent waiver of the right to counsel can be inferred from conduct. See *State v. Tharp, supra* (after a defendant has been advised of his right to counsel, his conduct in appearing without counsel may result in a waiver of counsel). Accord *State v. Eichelberger*, 227 Neb. 545, 418 N.W.2d 580 (1988).

Green was no stranger to the judicial system, he having been

charged with and convicted of a number of offenses as reflected in the record and in *State v. Green*, 229 Neb. 493, 427 N.W.2d 304 (1988) (where Green, before both a jury and this court, represented himself on charges basically identical to those presented in this appeal), and *State v. Green*, 236 Neb. 33, 458 N.W.2d 472 (1990) (where Green, having been charged with driving on a suspended license and having voluntarily, understandingly, and intelligently waived his right to counsel after a full explanation of the consequences of pro se representation, represented himself not only at pretrial conference, but also at the jury trial itself). It has been held that a defendant's familiarity with the criminal justice system is an important factor in determining whether waiver of counsel was knowingly and intelligently made. See, e.g., *Meyer, supra*; *State v. Dungan*, 149 Ariz. 357, 718 P.2d 1010 (1985); *Burton v. State*, 260 Ark. 688, 543 S.W.2d 760 (1976); *People v. Morissette*, 150 Ill. App. 3d 431, 501 N.E.2d 781 (1986), *appeal denied* 114 Ill. 2d 554, 508 N.E.2d 733 (1987). In view of Green's experience, a warning of the dangers and disadvantages of self-representation would have been a useless exercise.

One other major factor leads to the conclusion that Green's waiver of counsel was knowingly and intelligently made. A defendant may not utilize his or her right to counsel to manipulate or obstruct the orderly procedure in the court or to interfere with the fair administration of justice. *State v. Denbeck*, 219 Neb. 672, 365 N.W.2d 469 (1985). After the county court permitted Green 2 weeks to retain his own counsel, he appeared and made the unsupported claim that attorneys in Platte County were biased. As an explanation for not seeking an attorney from another area, Green said that he had better things to do with his time than worry about his court cases. When the county court refused yet another continuance so Green could seek counsel, Green suggested that this court might predicate error upon that refusal. From the described events, it can be inferred that Green was manipulating the system and obstructing the orderly progression of his case. He was afforded ample time to retain counsel, yet he freely chose to proceed on his own.

Although Green may have made an unwise decision in

representing himself, that does not render his waiver of counsel invalid. A waiver of counsel need not be prudent, just knowing and intelligent. A defendant who elects to represent himself cannot thereafter complain that the quality of his or her own defense amounted to a denial of effective assistance of counsel. *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Accord *State v. Rogers*, 208 Neb. 464, 303 N.W.2d 788 (1981) (a defendant who chooses to represent himself or herself must accept the consequences of that election).

The county court was not clearly erroneous in finding Green's waiver of counsel to be voluntary, knowing, and intelligent. See *State v. Strickland*, 209 Neb. 133, 306 N.W.2d 600 (1981) (issue of whether waiver of counsel after defendant was "Mirandized" was made voluntarily, knowingly, and intelligently is reviewed under "clearly erroneous" standard). This assignment of error is meritless.

## II. STANDBY COUNSEL

Green next contends that even if the court finds that he voluntarily, knowingly, and intelligently waived his right to counsel, the trial court should have appointed standby counsel to ensure a fair trial.

A trial court may—even over a defendant's objection— appoint standby counsel to aid the defendant if and when the accused requests help, and to be available to represent the defendant if termination of the defendant's self-representation is necessary. *Faretta, supra.* However, *Faretta* does not require a trial court to permit "hybrid representation." *McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984).

Green's argument necessitates a determination of the proper review by this court of a trial court's failure or refusal to appoint standby counsel. Permitting a pro se defendant standby counsel could well interfere with the orderly progression of the case. See, *United States v. Kimmel*, 672 F.2d 720 (9th Cir. 1982) (inconvenience); *Bowen v. State*, 606 P.2d 589 (Okla. Crim. App. 1980) (disorderly procedure). Furthermore, by appointing standby counsel, the trial court runs the risk of infringing on the defendant's right to

self-representation. See, e.g., *McKaskle, supra.* The trial court is in the best position to gauge these considerations. For those reasons, the appointment of standby counsel is left to the discretion of the trial court. See *People v. Mirenda*, 57 N.Y.2d 261, 442 N.E.2d 49, 455 N.Y.S.2d 752 (1982) (appointment of standby counsel is a subject for discretion of the trial judge, whose decision will not be disturbed absent an abuse of discretion).

In this case, Green never requested standby counsel. See *State v. Green*, 236 Neb. 33, 458 N.W.2d 472 (1990) (request for appointment of standby counsel is an important factor in deciding whether court should have done so). In light of Green's antagonism toward and his unsubstantiated distrust of the local bar and in light of his manipulative tactics, this appeal might well be based on interference with Green's right to self-representation if the court had appointed standby counsel. Under the circumstances, the trial court did not abuse its discretion in failing to appoint standby counsel.

## III. INTRODUCTION OF EVIDENCE OF PRIOR MISCONDUCT

During cross-examination of one of the witnesses during the State's case in chief, and during his own case in chief, Green elicited testimony regarding a number of his prior arrests and contacts with Columbus police officers. Green contends that the trial court committed reversible error by not immediately conducting a hearing outside the presence of the jury pursuant to Neb. Rev. Stat. § 27-104(3) (Reissue 1989) to determine the admissibility of the evidence.

Section 27-104(3) provides in relevant part, "Hearings on . . . preliminary matters shall be so conducted when the interests of justice require, or when an accused is a witness, if he so requests." In this case, Green maintains that the interests of justice required the hearing. The record is devoid of any request by Green for such a hearing.

Green claims in effect that the trial court had an obligation to save him from himself. In this regard, the U.S. Supreme Court has declared: "A defendant does not have a constitutional right to receive personal instruction from the trial judge on

courtroom procedure. Nor does the Constitution require judges to take over chores for a *pro se* defendant that would normally be attended to by trained counsel as a matter of course." *McKaskle v. Wiggins, supra* at 465 U.S. at 183-84. This court has held that a criminal defendant who proceeds pro se is held to the same trial standard as if he or she were represented by counsel. *State v. Spotted Elk*, 227 Neb. 869, 420 N.W.2d 707 (1988). We have further declared that a defendant may insist on representing himself or herself no matter how foolhardy that decision is, if made knowingly and intelligently, and once that decision is made, the defendant making that choice must accept the consequences of his or her election. *State v. Rogers*, 208 Neb. 464, 303 N.W.2d 788 (1981).

Green must accept the consequences of his election to proceed pro se. It is not up to the trial court to conduct the defense of a pro se defendant. A defendant's rights guaranteed under *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), must be honored, even if in doing so, a court allows a defendant to do harm to himself or herself. The trial court did not abuse its discretion in failing sua sponte to hold a hearing pursuant to § 27-104(3). See *United States v. Odom*, 736 F.2d 104 (4th Cir. 1984) (trial court's action under federal counterpart reviewed for abuse of discretion). This assignment of error is without merit.

## IV. SUFFICIENCY OF THE EVIDENCE

In his next assignment of error, Green argues that the evidence was insufficient to sustain his convictions for operating a motor vehicle while under the influence of alcoholic liquor and for his refusal to submit to a chemical test to determine the alcohol content of his blood, breath, or urine.

In determining the sufficiency of the evidence to support a finding of guilt in a criminal case, this court does not resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. *State v. Lohman*, 237 Neb. 503, 466 N.W.2d 534 (1991). Those matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support them. *Id.*

" ' "On a claim of insufficiency of evidence, the Supreme Court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may the Supreme Court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt." ' [Citation omitted.]"

*State v. Cogswell,* 237 Neb. 769, 771, 467 N.W.2d 680, 681-82 (1991).

Viewed in the light most favorable to the State, the record reflects the following: Officer Todd Thalken, who at all relevant times was a Columbus, Nebraska, police officer, testified that on March 19, 1989, at approximately 6:16 p.m., he saw a yellow Thunderbird automobile traveling eastward on 13th Street in Columbus at an estimated rate of speed of 60 m.p.h. Thalken followed the vehicle with the intention of giving the driver a verbal warning for speeding. After Thalken pulled behind the Thunderbird at a stoplight, the driver of the Thunderbird began power braking the car and squealing its tires for approximately 5 seconds. At that time, Thalken saw the driver's face in the rearview mirror of the Thunderbird and recognized him to be Green.

After Thalken signaled Green to stop, Green exited the Thunderbird "at a very fast rate" and refused Thalken's request to return to his own car. By the time Thalken got out of his vehicle, Green was at the side of the officer's vehicle, yelling at him. Thalken testified that Green appeared to have been drinking alcohol, swayed as he walked, smelled of alcohol, and had a flushed face. At the time, Thalken had been a Columbus police officer for 18 months, had received training at the Law Enforcement Training Center at Grand Island, and had made several arrests of persons suspected to be under the influence of alcohol. An eyewitness who observed Thalken and Green from across the street testified that Green appeared to be drunk and was loudly babbling. When Thalken asked Green if he had been drinking, the defendant said that he would not give any incriminating information. Green would not provide his driver's license, registration, proof of insurance, birth date, or name when the officer requested them.

Thalken asked Green to recite the alphabet, that being one of the field sobriety tests which the officer had been trained to administer. Thalken testified that Green "said, A B C and then he said — he started babbling — he said, is D before X or is R before Z and then he went on and just said a whole bunch of letters of the alphabet totally out of order with no direction to it." When Thalken asked Green to again recite the alphabet, the defendant recited it to $p$ without error, stopped, and refused to go further. Green failed a second field sobriety test which Thalken referred to as the "finger touching test." It was the officer's opinion that Green was under the influence of alcohol to the point where his driving skills were impaired. When Thalken asked Green to put his hands behind his back so he could be handcuffed for his arrest, Green refused, started walking away, and called the officer names. Thalken and another police officer, who had arrived to render assistance, were required to forcefully place Green under arrest.

As Green was being taken to the police station, he continued to berate Thalken. When Thalken attempted to take a picture of Green at the police station, Green unzipped his pants, pulled out his penis, and said, "[I]f you [want to] take a picture, take a picture of this." Thalken testified that the odor of alcohol was present in the room in which Green was placed. A preliminary breath test advisement form was read to Green at the police station. During the entire time that the form was read to Green, he repeatedly yelled, "I don't understand!" Green refused to take the preliminary breath test.

Thalken read a chemical test implied consent form to Green. The form was offered and received in evidence and provides in substance that the person to whom it is read is under arrest for operating a motor vehicle while under the influence of alcoholic liquor; that he or she is being required to submit to a chemical test of his or her blood, breath, or urine to determine the person's alcohol content; that he or she is subject to certain penalties for a refusal to submit to the test; and that if the advising officer directs that the test will be of the subject's blood or urine, the arrestee may choose whether to have his or her blood or urine tested. While Thalken was reading the form to Green, the defendant again repeatedly shouted, "I don't

understand!" When Thalken asked Green what parts he did not understand, Green kept stating, "I don't understand!" After the officer requested Green to sign the form, he replied, "I'm not going to sign anything I don't understand and I wouldn't even admit that I do understand it." Green never submitted to a chemical test of his blood or urine and refused to sign the form. Green was then placed in a holding cell, whereupon he pulled down his pants and urinated on the floor in front of Officer Thalken.

### 1. DRIVING WHILE UNDER THE INFLUENCE

It is unlawful for any person to operate or be in the actual physical control of any motor vehicle while under the influence of alcoholic liquor. Neb. Rev. Stat. § 39-669.07(1) (Reissue 1988). " 'As used in § 39-669.07, the phrase "under the influence of alcoholic liquor" means after the ingestion of alcohol in an amount sufficient to impair to any appreciable degree the ability to operate a motor vehicle in a prudent and cautious manner.' [Citation omitted.]" *State v. Tanner*, 233 Neb. 893, 895, 448 N.W.2d 586, 588 (1989). It is not necessary for a conviction for driving under the influence of alcoholic liquor that a sample of blood, breath, or urine show a certain concentration of alcohol in a defendant's blood, breath, or urine, as those are alternate offenses under § 39-669.07. See, *State v. Tatara*, 230 Neb. 279, 430 N.W.2d 692 (1988); *State v. Babcock*, 227 Neb. 649, 419 N.W.2d 527 (1988). "Either a law enforcement officer's observations of a defendant's intoxicated behavior or the defendant's poor performance on field sobriety tests constitutes sufficient evidence to sustain a conviction of driving while under the influence of alcoholic beverages. [Citations omitted.]" *State v. Lichti*, 219 Neb. 894, 897, 367 N.W.2d 138, 141 (1985).

Thalken, a trained and experienced police officer, observed Green driving at an excessive rate of speed and squealing his tires. The officer testified that Green smelled of alcohol, swayed as he walked, had a flushed face, exhibited extremely belligerent conduct, and failed two field sobriety tests. He further testified that in his opinion, Green was under the influence of alcohol to the point that his driving skills were

impaired.

Green raises a number of points which go to the weight of the evidence. As we have said, this court does not reweigh the evidence. Those factual questions were for the jury, which resolved them adversely to Green. The evidence was sufficient for a jury to find beyond a reasonable doubt that Green was guilty of driving while under the influence of alcohol.

### 2. REFUSAL TO SUBMIT TO A CHEMICAL TEST

Any law enforcement officer . . . may require any person arrested for any offense arising out of acts alleged to have been committed while the person was driving . . . a motor vehicle while under the influence of alcoholic liquor to submit to a chemical test of his or her blood, breath, or urine . . . when the officer has reasonable grounds to believe that such person was driving . . . a motor vehicle upon a public highway in this state while under the influence of alcoholic liquor.

Neb. Rev. Stat. § 39-669.08(2) (Reissue 1988). Subsection (4) of § 39-669.08 provides in substance that any person who refuses to submit to a chemical blood, breath, or urine test shall be guilty of a crime and, upon conviction thereof, shall be punished in the same manner as under § 39-669.07.

Green contends that the evidence shows that because he claimed he did not understand that he was being requested to submit to a chemical test, Officer Thalken never requested that he submit to the test. Therefore, Green concludes, the evidence against him was insufficient to show that he refused to submit to a chemical test.

A refusal to submit to a chemical test occurs within the meaning of the implied consent law when the licensee, after being asked to submit to a test, so conducts himself as to justify a reasonable person in the requesting officer's position in believing that the licensee understood that he was being asked to submit to a test and manifested an unwillingness to take it. [Citations omitted.]

*State v. Beerbohm*, 229 Neb. 439, 445, 427 N.W.2d 75, 79 (1988). As this court explained in *Clontz v. Jensen*, 227 Neb. 191, 196, 416 N.W.2d 577, 580 (1987): "The only understanding

required by the licensee is that he has been asked to take a test. It is not a defense that he does not understand the consequences of a refusal or is not able to make a reasoned judgment as to what course of action to take."

As a matter of fact, Green is incorrect. Officer Thalken's testimony shows that he read the implied consent form to Green and that Green was informed that he was required to submit to a chemical test of his blood, breath, or urine to determine the alcoholic content. Even assuming that Green did not hear the officer's request to submit to the test, acceptance of Green's argument would require this court to ignore common sense and permit absurdity to rule the day. One cannot evade the effect of the law simply by repeatedly screaming that he or she does not understand. In fact, Green's efforts during the reading of the form lead to just the opposite conclusion. The jury could reasonably have inferred that by attempting to drown out the reading of the implied consent form, Green hoped to escape taking the test and avoid the reach of §§ 39-669.07 and 39-669.08. This inference presupposes that Green knew exactly what he was doing and understood what was being asked of him. The evidence was sufficient to show that Green conducted himself in such a manner as to justify a reasonable person in Officer Thalken's position in believing that Green understood that he was being asked to submit to a chemical test and manifested an unwillingness to take it. There was sufficient evidence for the jury to find beyond a reasonable doubt that Green refused to submit to a chemical test for alcohol content.

## V. USE OF PRIOR OFFENSES
## FOR ENHANCEMENT

If one has been convicted in the previous 10 years of operating or being in actual physical control of any motor vehicle while under the influence of alcoholic liquor or drugs or of refusal to submit to a chemical test of his blood, breath, or urine for a determination of alcohol content, the convictions may be used to enhance the penalty for a current conviction for either of those offenses. §§ 39-669.07 and 39-669.08.

Relying on 1980, 1984, and 1987 convictions, the State sought to enhance each of Green's current convictions to third

offense. At an enhancement hearing held on July 10, 1989, the State offered the Platte County Court files from case No. 84-261 and case No. 86-640. The county court required the State to make copies of the files and to substitute them for the originals. The copies of the files were received in evidence.

In case No. 84-261, a jury in the county court for Platte County, on September 27, 1984, found Green guilty of driving while under the influence of alcoholic liquor and refusal to submit to a chemical test of blood, breath, or urine to determine alcohol content. A journal entry from that case discloses that at his arraignment, Green was informed of his right to counsel and right to court-appointed counsel if a possible penalty was imprisonment and if he was indigent. That entry further reflects that Green would secure his own counsel. Green stated at the enhancement hearing in the present case that he became dissatisfied with his attorney and decided to represent himself in case No. 84-261.

Included in the file in case No. 84-261 was the file from case No. 79-3526. The file reveals that on January 22, 1980, Green pled, and the county court for Saunders County found him, guilty of driving while intoxicated. A journal entry from that file reflects that Green was informed of his rights and that Green stated that he did not wish to be represented by an attorney. The journal entry does specify the rights of which Green was informed.

In case No. 86-640, a Platte County Court jury found Green guilty on January 28, 1987, of refusal to submit to a chemical test. A journal entry discloses that at his arraignment, Green appeared pro se and was advised of his right to an attorney and his right to have one appointed if he was indigent. The journal entry provided spaces wherein the court could indicate whether a defendant was asked if he or she wanted an attorney, had an attorney, had funds to hire an attorney, and was requesting court-appointed counsel. The spaces were left blank. Green requested a jury trial and chose to represent himself in that case. See *State v. Green*, 229 Neb. 493, 427 N.W.2d 304 (1988).

"[I]n order to prove a prior driving while under the influence of alcohol conviction for enhancement purposes, the State need show only that at the time of the prior conviction the defendant

had counsel or knowingly, voluntarily, and intelligently waived the right to counsel. [Citations omitted.]" *State v. Vanderkuur*, 235 Neb. 566, 567, 456 N.W.2d 473, 474 (1990).

"[T]he State establishes a prima facie case for proving a prior, counseled conviction by producing appropriate record evidence of a conviction which discloses that at a critical point in the proceedings—arraignment, trial, conviction, or sentencing—the defendant had either intelligently and voluntarily waived counsel or in fact was represented by counsel at one of those times. The defendant then has the burden of coming forward with evidence that in fact his prior conviction was uncounseled." [Citation omitted.]

*State v. Dyke*, 231 Neb. 621, 623, 437 N.W.2d 164, 166 (1989).

Green contends that because there was not a valid waiver of counsel in any of the proceedings in which he was previously convicted, the prior convictions cannot be used for enhancement purposes.

As a threshold matter, we first must determine whether we can reach the merits of Green's argument. If a defendant fails to object to the admission in evidence of records of his or her prior convictions, error claimed with respect to the admission of that evidence is not preserved for appellate review. *State v. Tonge*, 217 Neb. 747, 350 N.W.2d 571 (1984); *State v. Penas*, 200 Neb. 387, 263 N.W.2d 835 (1978). Absent plain error, when an issue is raised for the first time in the Supreme Court, it will be disregarded, as the court whose judgment is being reviewed cannot commit error regarding an issue never presented and submitted for disposition. *State v. Dixon*, 237 Neb. 630, 467 N.W.2d 397 (1991). However, the Supreme Court always reserves the right to note plain error which was not complained of at trial or on appeal but is plainly evident from the record, and which is of such nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, or fairness of the judicial process. *In re Interest of G.G.*, 237 Neb. 306, 465 N.W.2d 752 (1991).

Only with respect to the 1984 conviction can it be said that Green raised the issue of waiver of counsel before the trial court. Nonetheless, it would constitute a miscarriage of justice

to allow Green's penalty to be enhanced on the basis of prior, unconstitutional convictions. We find that the trial court committed plain error when it relied upon Green's 1980 and 1987 convictions to enhance the penalties in this case.

With respect to the 1980 conviction in Saunders County Court, it cannot be said that Green's waiver of counsel was knowing and intelligent. The record from that conviction fails to show that Green was even advised of his right to counsel or that an attorney would be appointed if he could not afford one. If one is unaware of his or her right to counsel, it follows that one cannot knowingly and intelligently waive that right.

The 1987 conviction suffers from a similar infirmity. Although Green was advised in that case of his right to counsel, including court-appointed counsel, there is nothing to show that his waiver of counsel was knowingly and intelligently made. The State's position seems to be that if one is informed of his or her right to counsel, a knowing and intelligent waiver may be inferred if he or she then appears pro se at trial. We reject that contention and reiterate that at a minimum, a sufficiently complete checklist or other docket entry may be used to establish a valid waiver of counsel as to prior convictions for enhancement purposes. *State v. Thompson*, 224 Neb. 922, 402 N.W.2d 271 (1987) (a checklist signed by a trial judge, which reflected that the defendant was advised of his right to counsel and waived that right, satisfied the State's burden of proving conviction in question was a valid one for enhancement purposes). Accord *State v. Foster*, 224 Neb. 267, 398 N.W.2d 101 (1986). The spaces provided for on the docket entry for waiver of counsel were left blank. Thus, the docket entry fails to show that there was any waiver of counsel.

The 1984 convictions of driving while under the influence of alcoholic liquor and refusal to submit to a chemical test to determine alcoholic content present a different case. After being informed of his right to counsel, Green advised the court that he would secure his own counsel. At his enhancement hearing in this case, Green testified:

> [W]hen [name] was my attorney in 84-261, I : : : approached the Court and declared that [he] was incompetent. Judge Gerald Rouse said that my findings

had no merit and he on his own considered [the lawyer] a very competent attorney. I had no recourse but to — Because of my financial status at the time, I was not going to be allowed another court appointed attorney, so I had no choice but to go pro se.

From this, it is clear that Green was aware that he had the right to a court-appointed attorney, that another lawyer would not be appointed to represent him, and that he made a conscious decision to forgo the aid of court-appointed counsel. The record sufficiently demonstrates a knowing and intelligent waiver of counsel in the 1984 proceeding. Accordingly, only the 1984 conviction may be used for enhancement purposes.

## VI. EXCESSIVE SENTENCES

In his final assignment of error, Green contends that the court imposed excessive sentences and should have sentenced him to probation. In view of our conclusion in part V of this opinion that Green's 1980 and 1987 convictions may not be used for enhancement purposes, the matter must be remanded for resentencing. Thus, there is no need to reach this assignment of error.

The district court's affirmance of the sentences is reversed. The cause is remanded to the district court with the directions that it vacate and set aside the county court's sentences and remand the matter to that court for further proceedings pursuant to law.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.