Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/02/2020 09:09 AM CDT

Harold Travis, appellant, v. Rhonda K. Lahm,
director, Nebraska Department of
Motor Vehicles, appellee.

___ N.W.2d ___

Filed July 10, 2020.    No. S-19-585.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.

2. ____: ____: ____. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Judgments.** Whether a decision conforms to law is by definition a question of law.

4. **Judgments: Appeal and Error.** An appellate court determines questions of law independently of the lower court.

5. **Administrative Law: Motor Vehicles: Licenses and Permits: Revocation: Police Officers and Sheriffs: Proof.** In an administrative license revocation hearing, the State establishes its prima facie case for license revocation by submitting the arresting officer's sworn report. Thereafter, the burden of proof rests solely with the motorist, who must show by a preponderance of the evidence that the requirements of revocation are not satisfied.

Appeal from the District Court for Cheyenne County: Derek C. Weimer, Judge. Affirmed.

Bell Island, of Island Law Office, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Milissa D. Johnson-Wiles for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Harold Travis appeals from a district court order affirming the revocation of his motor vehicle operator's license for refusing to submit to a chemical test of his breath. Travis asserts that he did not refuse to submit to a chemical test because he did not understand he was being asked to submit to a chemical test and because the arresting officer misled him as to the relative seriousness of a failure to submit to such a test. We find the district court's decision was not contrary to law and was supported by competent evidence and therefore affirm.

## BACKGROUND

*Travis' Arrest.*

Around 10:30 p.m. on December 6, 2018, in Cheyenne County, Nebraska, Austin Smith, a police officer with the Sidney Police Department, determined that the vehicle Travis was driving was exceeding the speed limit. Smith initiated a traffic stop. When Smith approached Travis, he detected the odor of alcohol and marijuana coming from the vehicle and began to investigate whether Travis was driving under the influence. To facilitate that investigation, Smith asked Travis to leave his vehicle and to sit in the front passenger seat of the patrol vehicle. Travis complied.

After Travis moved to the patrol vehicle, Smith noticed an even stronger smell of alcohol and the smell of burnt marijuana. Travis admitted to drinking alcohol and smoking marijuana earlier that afternoon. Smith then administered standardized field sobriety tests during which Travis showed signs of impairment. At that point, Smith asked Travis to submit to a preliminary breath test. Travis refused, and Smith arrested him.

Shortly after the arrest, Smith asked Travis to submit to a chemical test. Travis did not agree to take the chemical test.

*License Revocation Proceedings.*

A few days after Travis' arrest, Smith submitted a sworn report to the Department of Motor Vehicles (Department). In the report, Smith stated that he had stopped Travis' vehicle for speeding, that he had detected the odor of alcohol and marijuana, that Travis did not complete standard field sobriety tests as directed, that Travis had refused to take a preliminary breath test, that he had placed Travis under arrest, that he had read Travis the postarrest chemical test advisement form, and that Travis had refused to take the chemical test.

Travis filed a petition contesting the revocation of his license and requested a hearing. A hearing officer for the Department presided over a telephonic hearing at which Travis was represented by counsel. Travis and Smith testified about their roadside encounter, with most of their testimony focused on their interaction after Travis was arrested. On this topic, the testimony of Travis and Smith diverged.

Travis testified that less than a minute after he refused to take the preliminary breath test and while he and Smith were still at the same roadside location, Smith asked him to take another breath test. According to Travis, Smith did not explain this chemical test was a different test than the preliminary breath test he had refused earlier, and Travis did not understand he was being asked to submit to a separate test. Travis also testified that he asked the officer about the relative seriousness of the consequences of driving under the influence and refusing a test, and the officer told him that driving under the influence was "a worse offense than the refusal." Travis admitted that he was asked to submit to a chemical test and that he declined to take the test. He also testified that he declined to take the test because of the information Smith provided regarding refusal being a less serious offense.

Smith testified that shortly after he placed Travis under arrest and while still at the scene of the arrest, Smith read Travis the postarrest chemical test advisement form, instructed Travis that the chemical test was separate from the preliminary

breath test, and asked Travis to submit to a chemical test. According to Smith, Travis refused to take the chemical test. In response to questioning from Travis' counsel, Smith acknowledged that at some point, Travis asked him questions about the consequences of refusing a test. Smith testified that he did not fully understand Travis' question and that he did not recall saying that driving under the influence was more serious than a refusal. Smith remembered saying that he was arresting Travis for driving under the influence and that if he refused a test, Travis "would go to jail for that too."

After the submission of evidence, Travis contended that he did not understand he was being asked to submit to a test other than the preliminary breath test and that the officer told him that driving under the influence was more serious than refusing a test. Under those circumstances, he argued, a refusal had not occurred.

The hearing officer recommended revocation of Travis' operator's license. In a recommended order of revocation, the hearing officer stated that a refusal occurs when a motorist behaves in a way that would justify a reasonable person in the officer's position to believe the motorist understood he was being directed to take a test and that he displayed an unwillingness to do so. The hearing officer found that, under this standard, a refusal occurred, emphasizing that Travis admitted he knew he was being asked to take a test and he chose not to cooperate.

The director of the Department adopted the hearing officer's recommended order and revoked Travis' license. Travis appealed to the district court.

*District Court.*

The district court affirmed the director's revocation of Travis' driving privileges in a written order. In its order, the district court acknowledged Travis' arguments that he did not refuse to submit to a chemical test because the officer "gave him incorrect information regarding the consequences of a

refusal and . . . he did not understand what he was being asked to do." But the district court concluded that under *State v. Green*, 238 Neb. 328, 470 N.W.2d 736 (1991), the fact that Travis misunderstood exactly what he was being asked to do or the consequences of refusing the chemical test were not relevant. The only relevant questions, the district court asserted, were whether Travis was asked to take a test and whether he refused. The district court concluded that the record showed Travis was both asked to take a chemical test and refused and that thus, revocation of his license was proper.

Travis timely appeals from the district court's order.

## ASSIGNMENT OF ERROR

Travis assigns one error on appeal. Travis argues, restated, that the district court erred in failing to find that the requirements for revocation of his driver's license were not satisfied.

## STANDARD OF REVIEW

[1,2] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Hoppens v. Nebraska Dept. of Motor Vehicles*, 288 Neb. 857, 852 N.W.2d 331 (2014). When reviewing an order of a district court under the act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

[3,4] Whether a decision conforms to law is by definition a question of law. *Id.* An appellate court determines questions of law independently of the lower court. *Id.*

## ANALYSIS

*Background Regarding Administrative License Revocation.*

Before addressing Travis' arguments, we briefly review the law governing this administrative license revocation proceeding. Under Nebraska statute, any person who operates a motor

vehicle is deemed to have given his or her consent to submit to a chemical test of his or her blood, breath, or urine for the purpose of determining the concentration of alcohol or the presence of drugs. See Neb. Rev. Stat. § 60-6,197(1) (Cum. Supp. 2018). Another subsection of the same statute authorizes peace officers to, under certain circumstances, require persons they have arrested to submit to a chemical test. See § 60-6,197(2). The refusal to submit to such a chemical test is a crime just as driving a motor vehicle while under the influence of alcohol or drugs is a crime. See *State v. Cornwell*, 294 Neb. 799, 884 N.W.2d 722 (2016).

If a person refuses to submit to a chemical test as described above, the officer is also to inform the arrested person of the intention to confiscate and revoke the arrestee's driver's license. See Neb. Rev. Stat. § 60-498.01(2) (Cum. Supp. 2018). The officer is directed to initiate the revocation procedure by sending to the director of the Department a sworn report stating "(a) that the person was arrested as described in subsection (2) of section 60-6,197 and the reasons for such arrest, (b) that the person was requested to submit to the required test, and (c) that the person refused to submit to the required test." § 60-498.01(2). The arrested person may then request an administrative license revocation hearing at which the revocation of the person's driver's license may be challenged.

[5] In an administrative license revocation hearing, the State establishes its prima facie case for license revocation by submitting the arresting officer's sworn report. *Urwiller v. Neth*, 263 Neb. 429, 640 N.W.2d 417 (2002). Thereafter, the burden of proof rests solely with the motorist, who must show by a preponderance of the evidence that the requirements of revocation are not satisfied. *Id.*

In this appeal, Travis does not dispute that Smith's sworn report established a prima facie case for license revocation. Instead, he argues that the district court erred by not finding he had demonstrated that the requirements of revocation were not satisfied. Specifically, Travis contends that the evidence

introduced at the administrative license revocation hearing showed that he did not refuse to take a chemical test. We turn to that question now.

*Refusal of Chemical Test.*

We have held that a refusal of a chemical test takes place when the motorist's conduct allows a reasonable person in the officer's position to believe that the motorist was capable of refusal and manifested an unwillingness to submit to the test. See, e.g., *Betterman v. Department of Motor Vehicles*, 273 Neb. 178, 728 N.W.2d 570 (2007); *State v. Green*, 238 Neb. 328, 470 N.W.2d 736 (1991), *overruled on other grounds, State v. Vann, ante* p. 91, ___ N.W.2d ___ (2020); *Wohlgemuth v. Pearson*, 204 Neb. 687, 285 N.W.2d 102 (1979). As we originally explained when adopting that rule in *Wohlgemuth*, "any other result would force the director and the trial court into a psychological guessing game as to the [driver's] state of mind and his degree of capability of comprehension." 204 Neb. at 691, 285 N.W.2d at 104. We have also held that a motorist is capable of refusal even if he or she does not understand the consequences of refusing or is not able to make a reasoned judgment as to what course of action to take. The only understanding required on the part of the driver is that he or she has been asked to take a test. See, e.g., *Green, supra*.

The district court saw this proceeding as requiring a straightforward application of the principles discussed above. It acknowledged Travis' arguments that he did not understand that the chemical test and preliminary breath test were different and that Smith misled him by saying that a driving under the influence charge was a "worse offense" than a refusal to submit to a chemical test, but found these arguments were legally irrelevant. In the district court's view, the only relevant questions were whether Travis was asked to take a test and whether he refused. Because the district court found that the answer to both of those questions was yes, it affirmed the revocation of Travis' license.

Travis argues that this case is not as simple as the district court believed it to be. He argues that under several of our prior cases, even if Travis understood that Smith asked him to take a test and he refused, no refusal occurred because the information Smith provided was ambiguous or misleading. We turn now to the cases upon which Travis relies.

The first cases Travis relies on are *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995) (superseded by statute as stated in *Davis v. Wimes*, 263 Neb. 504, 641 N.W.2d 37 (2002)), and *Perrine v. State*, 249 Neb. 518, 544 N.W.2d 364 (1996) (superseded by statute). Under a statute in existence at the time of these cases, upon requesting a driver to submit to a chemical test, an arresting officer was required to inform the arrestee of the consequences of both refusing and failing a chemical test. In *Smith* and *Perrine*, however, the arresting officer failed to advise the driver of all such consequences. Because the statute made such an advisement mandatory, we held that even though the driver in *Smith* failed the test and the driver in *Perrine* refused it, their licenses could not be revoked.

We do not believe *Smith* or *Perrine* applies here. We held that revocation was not proper in those cases because the officer failed to provide information he was obligated by statute to provide. Travis does not argue Smith failed to provide statutorily required advice here, and there is no indication Smith did. The statute requiring the officer to advise the driver of various consequences of refusing or failing a chemical test has since been amended. See *State v. Turner*, 263 Neb. 896, 644 N.W.2d 147 (2002). The current version of the statute requires only that an arrestee be advised that "refusal to submit to such test or tests is a separate crime for which the person may be charged." § 60-6,197(5). Smith's testimony suggests he advised Travis that refusal was a separate crime, and Travis makes no argument otherwise.

The other case Travis relies upon is *Wiseman v. Sullivan*, 190 Neb. 724, 211 N.W.2d 906 (1973). In that license revocation proceeding, after the driver was arrested on suspicion

of driving while intoxicated, an officer interspersed accurate information concerning the consequences of refusing a chemical test with "Miranda type" warnings which included a statement that the driver had the right to have an attorney present during "any part of my investigation." *Id.* at 727, 211 N.W.2d at 909 (emphasis omitted). The officer then asked the arrestee if he wished to contact an attorney before finally asking if he would submit to a chemical test of his breath. The driver responded that he wanted to consult with an attorney. We held that, under the circumstances, the driver's failure to agree to the test did not amount to a refusal. We reasoned that only a person trained in law and familiar with both the *Miranda* doctrine and the implied consent statute would reasonably understand that he had no right to consult with counsel concerning the breath test.

We find Travis' reliance on *Wiseman* unavailing. Our holding in *Wiseman* was limited to cases in which a driver is asked to submit to a chemical test but also given a *Miranda* warning that reasonably leads the driver to believe he or she has the right to consult with an attorney regarding the test and the driver does so. See *Wiseman, supra*. In a later case, we recognized that our holding in *Wiseman* was narrow. See *State v. Richter*, 240 Neb. 913, 917, 485 N.W.2d 201, 204 (1992) ("[o]ur cases have clearly held that unless there has been a commingling of the *Miranda* warning and the implied consent statute, a defendant's lack of understanding of the consequences of a refusal to take a chemical test is not a defense") (citing *Wiseman, supra*).

Not only does the holding of *Wiseman* not assist Travis, neither does its reasoning. The driver in *Wiseman* was reasonably led to believe that he had a legal right to consult with an attorney and merely asked to do so. In that sense, the driver was not so much *refusing* a test as electing to first talk to an attorney, an option which was presented as legally permitted. Travis, on the other hand, claims he declined to take the chemical test because Smith told him that driving under

the influence was a "worse offense" than refusing the test. Even assuming that testimony is true and Smith's testimony to the contrary is not, it does not establish that Travis was led to believe that he could choose to decline the test without legal consequence or that he was doing something other than declining to submit to the test. At best, Travis' testimony would show that he did not submit to the chemical test because he believed declining the test was a less serious offense. Unlike the facts in *Wiseman*, we see no basis to say that this was not a refusal for purposes of the statute.

With respect to Travis' contention that Smith provided him with misleading information and that he refused to submit to the test in reliance on that information, we are aware of cases in which courts have held that it is a violation of the Due Process Clause of the U.S. Constitution for an officer to provide misleading information regarding the consequences of taking or failing to take a blood alcohol test. See, e.g., *State v. Stade*, 683 A.2d 164 (Me. 1996); *Cates v. Director of Revenue State of Mo.*, 943 S.W.2d 281 (Mo. App. 1997). But see *State v. Gifford*, No. A-15-492, 2016 WL 2764727 (Neb. App. May 10, 2016) (selected for posting to court website) (holding that officer did not violate defendant's due process rights by providing inaccurate information prior to asking him to take chemical test). But because Travis has never argued that his due process rights were violated as a result of the misleading information he alleges Smith provided to him, we do not consider that issue here.

Having rejected Travis' argument that the district court applied an incorrect legal framework, the only question that remains is whether the district court's decision that Travis refused to take the test is supported by competent evidence. We find that it is. Whatever Travis may not have understood, he admitted that he was asked to submit to the chemical test and that he declined to take it. Indeed, as we have noted, Travis identified specific reasons he refused to take the test. Further, Travis points to no evidence that suggests

a reasonable person in Smith's position would have believed that he was not capable of refusal or that he did not understand that he was asked to take a test.

Smith's report established a prima facie case that Travis refused to take the chemical test. The district court's decision that Travis failed to carry his burden to show otherwise is supported by competent evidence.

## CONCLUSION

We find that the district court did not err in affirming the order revoking Travis' driver's license. Accordingly, we affirm.

Affirmed.