STATE OF NEBRASKA, APPELLEE, V. ROGER LEE WEIKLE,
APPELLANT.

388 N.W.2d 110

Filed June 6, 1986.   No. 85-647.

Jerry Soucie, for appellant.

Robert M. Spire, Attorney General, and Calvin D. Hansen, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This was a criminal proceeding in which the appellant, Roger Lee Weikle, was charged in an information with five felony counts of escape, attempted escape, use of a weapon in the commission of attempted escape, first degree false imprisonment, and use of a weapon in the commission of a first degree false imprisonment. On May 20, 1985, he was found guilty of the first three offenses and a mistrial was declared with respect to the last two when the jury failed to agree. At an enhancement hearing Weikle was found to be a habitual criminal and sentenced to three consecutive terms accumulating to 50 to 150 years. The motion for a new trial was overruled and this appeal followed.

The five errors assigned can be summarized as follows: (1)

The trial court erred in refusing to conduct an evidentiary hearing on the alleged denial of Weikle's constitutional right to confer with his attorney and in refusing to order prison officials to allow Weikle reasonable access to a telephone to confer with his attorney; (2) The trial court erred when it ordered Weikle and his inmate witnesses to be shackled during the testimony of the inmate witnesses; and (3) The trial court abused its discretion in imposing excessive sentences.

Throughout these proceedings Weikle was an inmate of the Nebraska State Penitentiary. The rule for prisoners housed in the section where Weikle was assigned provides that requests to make telephone calls for legal purposes will be approved only when the inmate has a case or hearing scheduled within 2 weeks or when the inmate's attorney makes the request. Although he did not have a trial or hearing scheduled within 2 weeks, Weikle forwarded a written request to prison officials for access to the phone, once a day, to call his attorney. His request was denied. He made a second request, which was also denied. He was advised to contact his attorney via correspondence. Weikle's attorney subsequently wrote to prison officials asking that Weikle be allowed access to the phone to speak to him. This request was denied; the record does not reflect the reason for the denial.

Prior to trial, a hearing was held on defendant's motion for access to a phone to call his attorney. The court dismissed the motion because the proper parties were not before the court. According to the court, the proper parties would have included the State, the warden of the Nebraska State Penitentiary, and the Department of Correctional Services.

Weikle did not allege at any time that he was being deprived of complete access to his attorney or that his inability to contact his attorney by phone resulted in ineffective assistance of counsel. While it is true that Weikle is not deprived of the full panoply of constitutional rights when the prison doors close behind him, "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). "The fact of confinement as well as the legitimate goals and policies of the

penal institution limits these retained constitutional rights." *Id.* at 546.

In a case concerning mail censorship in prison, the U.S. Supreme Court elected to consider the issues in light of the general problem of incidental restrictions on first amendment liberties imposed in furtherance of legitimate governmental activities rather than as an aspect of "prisoners' rights." *Procunier v. Martinez*, 416 U.S. 396, 409, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974). The Court concluded:

> One of the primary functions of government is the preservation of societal order through enforcement of the criminal law, and the maintenance of penal institutions is an essential part of that task. The identifiable governmental interests at stake in this task are the preservation of internal order and discipline, the maintenance of institutional security against escape or unauthorized entry, and the rehabilitation of the prisoners. While the weight of professional opinion seems to be that inmate freedom to correspond with outsiders advances rather than retards the goal of rehabilitation, the legitimate governmental interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate correspondence.

*Id.* at 412-13.

> Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry. Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security. . . .
>
> . . . Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Bell v. Wolfish, supra* at 547.

We do not believe that the district court was correct in

dismissing defendant's motion for access to a telephone because the proper parties were not before the court. We think the district court does have the authority to order the custodian of a prisoner to allow that prisoner access to a telephone if otherwise the prisoner's constitutional rights would have been violated. The rights granted under the sixth amendment to the U.S. Constitution could not be assured otherwise. As the federal case law indicates, however, the rule in effect at the prison restricting the inmates' access to the telephone does not violate Weikle's constitutional rights. Weikle has not shown that he was prejudiced in any way. Unless an error can be considered prejudicial to the rights of a defendant, it may not be considered as ground for reversal. *State v. Cinema 16, Inc.*, 197 Neb. 675, 250 N.W.2d 633 (1977). See *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

Turning to the second assignment of error, that the trial court erred when it ordered Weikle and his inmate witnesses to be shackled during the testimony of the inmate witnesses, we again find that the relevant case law supports the actions of the court. The facts surrounding the shackling are as follows. After the close of the State's case, a meeting was held with the following persons present: a representative from the Attorney General's office, the Director of Corrections, the associate warden of the penitentiary, the chief deputy of the sheriff's department, a captain from the sheriff's department, Weikle's counsel, the county and chief deputy county attorneys, and the trial judge. After listening to the concerns of the parties regarding security, the court directed that the inmate witnesses be brought to the courtroom out of the presence of the jury and remain in arm and leg shackles during their testimony. In addition, the court ordered Weikle to be restrained by leg shackles while other inmates were in the courtroom. Weikle objected to wearing leg shackles on the ground that he had not caused any disturbance thus far. He objected to the shackling of the inmate witnesses, alleging that this would prejudice his right to a fair trial. The court overruled his objections and indicated that the only reason for the restraints was because of the presence of the other inmates and the lack of adequate personnel to provide security.

In *South v. State*, 111 Neb. 383, 196 N.W. 684 (1923), the court concluded that the accused in a criminal prosecution should be free from shackles during his trial *unless they are necessary to prevent violence or escape*. Further, in *Illinois v. Allen*, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970), the U.S. Supreme Court held that while shackling a defendant is undesirable, there are occasions where it is the fairest and most reasonable manner to handle a defendant. "Courts must do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience." *Estelle v. Williams*, 425 U.S. 501, 504, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976). While one who is accused of a crime is entitled to have his guilt or innocence determined solely on the basis of evidence introduced at trial and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial, this does not mean that every practice tending to single out the accused from everyone else in the courtroom must be struck down. *Holbrook v. Flynn*, 475 U.S. _____, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986).

In this case the court was faced with the prospect of seven inmates housed in the maximum security section of the penitentiary testifying during trial. In addition, there had been testimony earlier in the trial that the defendant was contemplating another escape attempt. Under these circumstances the actions of the court seem not only reasonable but prudent to ensure the safety of the court personnel and the jury. Immediately after the last inmate witness testified, the court had the shackles removed from Weikle. We find no error in the actions of the court.

The third assignment of error is that the trial court abused its discretion in imposing excessive sentences. It is a well-settled rule in Nebraska that absent an abuse of discretion, a sentence imposed within statutory limits will not be disturbed on appeal. *State v. Fix*, 219 Neb. 674, 365 N.W.2d 471 (1985). In this case the defendant had an extensive criminal record including convictions for auto theft, burglary, driving while intoxicated, and two prior escapes. The defendant was adjudged a habitual criminal, and the sentences were within statutory limits. We

find no abuse of discretion. The judgment is in all respects affirmed.

AFFIRMED.

KRIVOSHA, C.J., concurring in part, and in part dissenting.

I concur in all of the majority opinion except that portion which concludes that it was appropriate for the court to order Weikle shackled during a portion of the trial. In that regard I believe that the trial court was in error and shackling of Weikle was prejudicial, thereby entitling him to a new trial.

In reaching that conclusion I am not unmindful of the fact that Weikle was being tried for escape. It is that very reason, however, which compels me to conclude that a defendant being tried for escape who is shackled in the presence of the jury does suffer prejudice. The shackling is simply proof positive to the jury that the individual is one who is likely to escape. As the majority observes in *South v. State*, 111 Neb. 383, 196 N.W. 684 (1923), this court "concluded that the accused in a criminal prosecution should be free from shackles during his trial unless they are necessary to prevent violence or escape." (Emphasis omitted.) There is no evidence that Weikle was inclined to be violent or to attempt to escape from court. During most of the trial he was unshackled, the shackles being placed on him only during the time that other inmates testified. Apparently, there was some concern that if there were more than one inmate in the courtroom at a time a problem might arise. However, the witness inmates were shackled during their testimony and, obviously, were not in a position to create any diversion which would permit Weikle to flee. The majority notes that in this case there had been testimony earlier in the trial that the defendant was contemplating another escape attempt. The evidence, however, was that he was contemplating another escape attempt from the adjustment center in the penitentiary sometime in the future and not from the courtroom during the trial. If, indeed, the court was so concerned about the possibility of escape, one would assume that the court would have ordered him to remain shackled during the balance of the trial. Yet, the moment that the inmate witnesses concluded their testimony, the shackles were removed.

I simply do not believe that the facts in this case were

sufficient to justify the exception to the general rule and, under the circumstances here, believe they worked a prejudice to the defendant.

While we must do everything we can to combat crime, we must not do it at the sacrifice of the Constitution nor the constitutional rights of persons accused of crimes. See *State v. Havlat*, 222 Neb. 554, 385 N.W.2d 436 (1986) (Krivosha, C.J., dissenting).