STATE OF NEBRASKA, APPELLEE, V. GRAYLIN GRAY, ALSO KNOWN AS GRAYLIE GRAY, ALSO KNOWN AS OSCAR GRAY, APPELLANT.

606 N.W.2d 478

Filed February 1, 2000.   No. A-99-120.

974

Sean J. Brennan for appellant and, on brief, Graylin Gray, pro se.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

Defendant Graylin Gray, after waiving counsel and choosing to represent himself, was convicted of second degree forgery. Gray was found to be a habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 1995) and was sentenced to 10 to 20 years' imprisonment as required by the mandatory sentencing provision of the habitual criminal statute. Gray appeals the conviction, asserting eight assignments of error. Our opinion deals mainly with the extent to which a trial judge may properly become involved in the presentation of evidence against a defendant.

## I. BACKGROUND

On April 15, 1997, Gray, along with Sonny Havlicek and Freedom Woods, were taken into custody for their involvement in a forged check cashing plan. The plan involved going to various National Bank of Commerce (NBC) drive-up teller windows and cashing forged checks drawn on an account owned by Bluestem Books. Woods drove the vehicle, and Havlicek posed as Teresa Devall, the check payee, while Gray orchestrated the plan from the backseat. Gray would pass the checks from the backseat up to Havlicek. Havlicek, posing as Devall, would then give the checks and Devall's identification card to Woods, who would then present the checks for payment. This process was repeated three times at three separate bank locations. The trio then proceeded to the NBC bank location at 40th and South Streets in Lincoln, Nebraska, where they attempted to cash check No. 1487 drawn on the Bluestem Books account in the amount of $855.10.

The teller at this location had been advised to hold any checks written on the Bluestem Books account. The teller notified her supervisor that Bluestem Books check No. 1487 was being presented for payment, and the police were notified. The police arrived shortly thereafter and took Gray, Woods, and Havlicek into custody, but Gray was later released.

The police searched the vehicle used in the plan and found several items on the floor in the backseat area where Gray had been sitting. These items included two identification cards (one belonging to Devall), a newspaper, several checks from the Bluestem Books account, and two pages from the Lincoln telephone directory yellow pages listing the locations of NBC banks. The police also found three envelopes of cash obtained from the three prior Bluestem Books checks which were cashed at other NBC bank locations.

Initially, Havlicek claimed Woods and Gray had nothing to do with the check cashing plan. However, on April 17, 1997, Havlicek confessed the plan and disclosed Gray's involvement in a statement given to Officer Erin Sims of the Lincoln Police Department. Havlicek stated that she owed Gray money and that Gray had developed the check cashing plan as a way for Havlicek to repay the debt. Havlicek stated that Gray gave her Devall's identification card and that she was to pretend to be Devall while cashing the checks. She also stated that Gray had torn pages from the yellow pages which gave the addresses of various NBC bank locations in Lincoln and that Gray directed Woods to the bank locations.

Gray was subsequently arrested and charged with second degree forgery and with being a habitual criminal. The jury found Gray guilty of the forgery charge. After an enhancement hearing, Gray was sentenced to 10 to 20 years' imprisonment.

## II. ASSIGNMENTS OF ERROR

Gray asserts eight assignments of error: (1) The district court erred in admitting evidence of other crimes; (2) the district court erred in finding the evidence sufficient to prove, by a clear and convincing standard, that the other crimes introduced at trial were committed by Gray; (3) the district court erred in allowing Havlicek to testify without deciding Gray's motion to discover medical records; (4) the district court erred in finding that no

prejudice occurred when Gray was viewed in full restraint by a jury member; (5) the district court erred in finding no prejudice when Gray was viewed under police escort on six separate occasions by jury members; (6) the district court erred in overruling Gray's objection to allowing the prosecution to have an additional opportunity to prove the validity of a prior conviction after the judge revealed to the State its error in proof; (7) the district court erred in finding the evidence sufficient to prove the habitual criminal allegation, because the documents offered to prove the prior convictions did not reflect the court's act of rendering judgment by the judge's signature under court seal; and (8) the district court erred in finding sufficient evidence to prove that Gray is a habitual criminal.

## III. STANDARD OF REVIEW

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in the admissibility of evidence. *State v. Kirksey*, 254 Neb. 162, 575 N.W.2d 377 (1998); *State v. Merrill*, 252 Neb. 736, 566 N.W.2d 742 (1997). The admissibility of evidence is reviewed for an abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Kirksey, supra; State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *State v. LeGrand*, 249 Neb. 1, 541 N.W.2d 380 (1995), *overruled on other grounds, State v. Louthan*, 257 Neb. 174, 595 N.W.2d 917 (1999).

## IV. ANALYSIS

### 1. RULE 404 EVIDENCE

Gray first asserts the trial court erred in allowing evidence of other crimes or bad acts because such evidence adduced at trial was improperly used as character evidence.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he

or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Neb. Evid. R. 404, Neb. Rev. Stat. § 27-404(2) (Reissue 1995).

Gray was charged with one count of forgery for his involvement in cashing check No. 1487. The trio had successfully cashed three other checks, Nos. 1488, 1485, and 1486, prior to attempting to cash check No. 1487. Pursuant to § 27-404(2), the State offered these three cashed checks, other Bluestem Books checks found in the car, and the section of the yellow pages. Prior to trial, a hearing was held to determine the admissibility of these exhibits. The trial court determined that checks Nos. 1488, 1485, 1486, and 1481 through 1484 were admissible, as well as the sheets torn from the yellow pages listing the NBC bank locations. Gray objected to the State's § 27-404(2) evidence on foundation and on relevance to the charge concerning check No. 1487.

Section 27-404(2) is an inclusionary rule which permits the use of relevant other bad acts for purposes except to prove the character of a person in order to show that such a person acted in conformity with that character. *State v. Eona*, 248 Neb. 318, 534 N.W.2d 323 (1995). The rule sets forth the circumstances under which evidence of other bad acts is admissible: as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* Gray asserts the purpose of the evidence offered by the State under § 27-404(2) was to show his propensity to commit the crime.

It is within the discretion of the trial court to determine the admissibility of evidence of other wrongs or acts, and the trial court's decision will not be reversed absent an abuse of that discretion. *Kirksey, supra*; *Eona, supra*. In reviewing trial court rulings which have admitted evidence of other crimes, an appellate court considers (1) whether the evidence was relevant, (2) whether the evidence had a proper purpose, (3) whether the probative value of the evidence outweighed its potential for unfair prejudice, and (4) whether the trial court, if requested, instructed the jury to consider the evidence only for the purpose for which it was admitted. *Kirksey, supra*.

The evidence shows that Havlicek owed Gray money and that Gray devised a plan whereby Havlicek could satisfy the debt. The evidence also shows Gray controlled the Bluestem Books checks. Gray brought the checks, as well as the identification cards and yellow pages, with him. He controlled where the trio went and which checks were presented for cashing. The evidence establishes Gray's plan, motive, and opportunity to have Havlicek assist him in cashing the forged checks so as to satisfy a debt. We find the evidence adduced under § 27-404(2) was relevant and offered for a proper purpose because it tends to prove Gray devised a plan to cash forged checks, which plan was also followed when check No. 1487 was presented.

■ The method of attempting to cash check No. 1487 had a "signature" to it which was identical to the way the other three forged checks were cashed, crimes with which Gray was not charged. Proof of a "signature" of a crime from other bad acts is a proper purpose for § 27-404(2) evidence. See *State v. Wade*, 7 Neb. App. 169, 581 N.W.2d 906 (1998). We find that the evidence of other crimes or bad acts was properly admitted to prove Gray's motive, plan, and opportunity. This assignment of error is without merit.

### 2. DISCOVERY MOTION FOR HAVLICEK'S MEDICAL RECORDS

■ Gray next asserts the trial court erred by allowing Havlicek to testify without deciding Gray's motion to discover Havlicek's medical records. We note that the transcript does not contain Gray's discovery motion concerning Havlicek's medical records. Nor does the record disclose a ruling on Gray's motion. It is incumbent upon the party appealing to present a record which supports the errors assigned, and absent such a record, the decision of the lower court is generally affirmed. *Van Ackeren v. Nebraska Bd. of Parole*, 251 Neb. 477, 558 N.W.2d 48 (1997). Furthermore, Gray failed to object to Havlicek's testimony at trial. A party who fails to make a timely objection to evidence waives the right on appeal to assert prejudicial error concerning the evidence received without objection. *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *cert. denied* 526 U.S. 1162, 119 S. Ct. 2056, 144 L. Ed. 2d 222 (1999). Gray has failed to present a record which supports his assignment of error and has further failed to object to Havlicek's testimony at trial.

### 3. JURY MEMBERS VIEWING GRAY IN RESTRAINTS

Gray's next two assignments of error concern whether the trial court erred in finding no prejudice to Gray when he was viewed one time by a juror while he was in full restraint, and six times by jurors while he was under police escort. The Supreme Court faced the issue of jurors viewing defendants in restraints in *State v. Weikle*, 223 Neb. 81, 388 N.W.2d 110 (1986). Restraints were used in *Weikle* because there were inmate witnesses in the courtroom, and the defendant also had expressed an intent to escape. The Supreme Court held the action of the trial court to be both reasonable and prudent to ensure the safety of all involved.

In the present case, the trial judge, Judge Paul D. Merritt, Jr., noted that it was not possible to get Gray into the courtroom without going through public areas because of the design of the building. Judge Merritt examined the jury to determine whether Gray had been prejudiced by having been seen in restraints and police custody. He asked if the jurors could be fair and impartial despite seeing Gray being escorted by uniformed officers. The jury indicated that it could remain fair and impartial. At Gray's urging, Judge Merritt asked the jury if seeing Gray with uniformed escort indicated to any of the members of the jury that Gray was in fact in custody. None of the jurors responded that they thought Gray was in custody. We find that Judge Merritt's efforts to ensure no prejudice to Gray from being viewed by jurors while in restraints and under escort were fair and reasonable. Gray's assignment of error is without merit. Finding no error which affects the underlying conviction, we therefore affirm Gray's conviction on the forgery charge.

### 4. ENHANCEMENT HEARING ISSUES

Gray next raises issues concerning the events surrounding his sentence enhancement hearings. Part of the evidentiary record concerning enhancement of his sentence under the habitual criminal statute includes enhancement proceedings in two other convictions, which have been appealed and which we also decide this day. Because of the interrelatedness of the enhancement evidence and issues in all three of Gray's appeals (*State v. Gray*, No. A-99-118, 2000 WL 123701 (Neb. App. Feb. 1, 2000) (not designated for permanent publication); *State v. Gray*,

No. A-99-119, 2000 WL 123700 (Neb. App. Feb. 1, 2000) (not designated for permanent publication); and the instant appeal, No. A-99-120), we have fully written about the enhancement issues in this case, but there is still some overlap between the three cases. Hopefully, our approach to the enhancement issues in the three cases will become clear as we proceed with this opinion. Therefore, we do not fully repeat our discussion of the enhancement issues in the other two opinions. We turn to the details.

Gray was found guilty of three felonies in three separate trials within a relatively small window of time. The State sought enhancement in all three cases, alleging Gray was a habitual criminal pursuant to § 29-2221(1), which provides in part:

> Whoever has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state or by the United States or once in this state and once at least in any other state or by the United States, for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal and shall be punished by imprisonment in a Department of Correctional Services adult correctional facility for a mandatory minimum term of ten years and a maximum term of not more than sixty years[.]

The three cases affected by the enhancement issues are described as follows:

On July 7, 1997, Gray was charged by information with second degree forgery, case No. A-99-120, hereinafter referred to as the "forgery" case, which is the instant appeal involving the Bluestem Books check. While in custody, Gray assaulted a guard in his jail cell. As a result, on September 9, 1997, Gray was charged by information with assault by a confined person. We shall refer to this case, case No. A-99-119, as the "jail assault" case. Both of these cases were tried in the district court for Lancaster County before Judge Merritt. On October 14, 1997, Gray was charged by information with another assault by a confined person after he assaulted a guard in the courtroom, case No. A-99-118, hereinafter referred to as the "courtroom assault" case. This case was tried in the district court for Lancaster County before Judge Karen Flowers. Gray represented himself in all three trials.

On July 29, 1998, Gray was found guilty in the courtroom assault case, and today, we have affirmed that underlying conviction in a not designated for permanent publication opinion. On August 25, Judge Flowers found Gray to be a habitual criminal based on the evidence adduced by the State at an enhancement hearing held on August 21. Gray was then found guilty in the forgery case on August 24 and on September 1 in the jail assault case. Both trials were in Judge Merritt's court. An enhancement hearing for both of these cases was set for September 22 before Judge Merritt.

At the September 22, 1998, enhancement hearing, the State offered three exhibits, exhibits 26, 27, and 40, in the instant forgery case to show that Gray had been twice convicted, sentenced, and committed to prison for a term of not less than 1 year. These three exhibits are identical to the three exhibits offered for enhancement purposes in the courtroom assault case before Judge Flowers. There was no evidence adduced for enhancement purposes in the jail assault case because of a continuance granted to Gray to get authenticated copies of his exhibits. We note that two of these exhibits were offered as evidence of prior bad acts in the guilt phase of the trial for the jail assault case, rather than as evidence for enhancement purposes. However, the State never actually made an offer of its enhancement evidence in the jail assault case until October 29. We note that exhibits 20 in the courtroom assault trial, 26 in the forgery trial, and 2 in the jail assault trial are identical. Exhibits 21 (courtroom assault), 27 (forgery), and 3 (jail assault) are identical. Exhibits 22 (courtroom assault) and 40 (forgery) are also identical, but no copies of these exhibits appear in the record for the jail assault case. For the remainder of this opinion, we use the pertinent exhibit numbers from the forgery case, the subject of this opinion, to wit: exhibits 26, 27, and 40.

Exhibit 26 contains Gray's commitment based on a jury conviction for theft in Lancaster County District Court, where he received a sentence of 20 months' to 5 years' imprisonment. This exhibit was offered to show that Gray has once been convicted of a felony for which he served not less than 1 year's imprisonment. Gray assigns no error concerning this exhibit, and it is unnecessary to address it any further.

Exhibit 27 contains Gray's commitment based on a no contest plea to the crime of forgery entered by Gray in Lancaster County District Court, where he received a sentence of 1 to 3 years' imprisonment. This exhibit was offered to show that Gray had been convicted of a felony and served no less than 1 year's imprisonment for a second time. Exhibit 40 is a transcription of the proceedings wherein Gray, representing himself, entered his no contest plea in that case.

During the September 22, 1998, enhancement hearing before Judge Merritt, the State rested after offering exhibits 26, 27, and 40. Gray then offered copies of the same documents offered by the State in an apparent effort to contradict the State's evidence. However, Gray's exhibits were not authenticated, and therefore the court sustained the State's objection to them. Judge Merritt suggested that Gray should move for a continuance so that he might obtain authenticated copies of his exhibits. Gray did so, and the hearing was continued to September 29.

Prior to the September 29, 1998, resumption of the enhancement hearing, Judge Merritt apparently became concerned that there was no showing in exhibits 27 and 40 that Gray had knowingly and intelligently waived his right to counsel when he pled no contest to the prior forgery charge. Judge Merritt notified the State, Gray, and Gray's standby counsel of the issue via letter. Although Judge Merritt's comments about his letter and its contents are in our record, the letter itself is not in the record. Judge Merritt further stated on the record that he had notified Judge Flowers of the issue because the State had offered the same exhibits into evidence against Gray in the courtroom assault enhancement hearing held before Judge Flowers. The records of all three cases show us that after Judge Merritt notified Judge Flowers of his concerns over exhibits 27 and 40, Judge Flowers vacated her previous finding that Gray was a habitual criminal. She allowed the State to withdraw its rest in the courtroom assault case to present further evidence on the issue over Gray's objection. Judge Merritt likewise allowed the State to withdraw its rest, over Gray's objection, in the enhancement portion of the forgery case.

At the September 29, 1998, hearing before Judge Merritt, Gray objected to the State being allowed to withdraw its rest and

asserted that the court had become an instrument of the State by pointing out the flaw in the State's proof. The objection was overruled, and the hearing was continued until October 29, when the State was then allowed to offer additional evidence in support of the habitual criminal allegations. There was one hearing held jointly before Judges Merritt and Flowers on October 29 concerning the habitual criminal allegation in each of these convictions. At the close of evidence, Gray was found to be a habitual criminal by both judges. Thereafter, Gray was sentenced to 10 years' imprisonment for the conviction in Judge Flowers' court and 10 to 20 years' imprisonment for each of the two convictions in Judge Merritt's court, the sentences to run consecutively.

### (a) Forgery Enhancement

■■■ Gray asserts that Judge Merritt erred in allowing the State to withdraw its rest after bringing to the attention of the State the issue of whether there was proof that Gray had knowingly and intelligently waived counsel when he pled no contest. The matter of permitting a party to withdraw his or her rest is within the trial court's discretion, and the trial court's ruling will not be disturbed on appeal absent an abuse of that discretion. *State v. Thomas*, 236 Neb. 84, 459 N.W.2d 204 (1990). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Talkington v. Womens Servs.*, 256 Neb. 2, 588 N.W.2d 790 (1999).

■■■ Both Judges Merritt and Flowers allowed the State to withdraw its rest to address the issue raised by Judge Merritt. Gray argues that absent Judge Merritt's intervention, Gray would not have been found to be a habitual criminal. The challenge to a prior plea-based conviction that a defendant can raise in a habitual criminal allegation is limited to whether the defendant had or waived counsel. *State v. Partee*, 240 Neb. 473, 482 N.W.2d 272 (1992). *Partee* makes it clear that the same rules apply whether it is a habitual criminal proceeding or a pure enhancement, such as in a second- or third-offense driving under the influence. See, also, *State v. LeGrand*, 249 Neb. 1, 541 N.W.2d 380 (1995), *overruled on other grounds, State v.*

*Louthan,* 257 Neb. 174, 595 N.W.2d 917 (1999). All other challenges constitute an impermissible collateral attack on the judgment, which must be raised by a direct appeal from the prior conviction. See *Louthan, supra.*

The record shows that when the State offered its evidence (exhibits 26, 27, and 40), Gray did not object to the offer on the ground that the exhibits failed to show he had or waived counsel during his no contest plea. After Judge Merritt's letter, Gray objected to Judge Merritt's allowing the State to withdraw its rest to adduce additional evidence, stating:

> Because due to your letter, the State has failed to present sufficient evidence that the defendant is [a] habitual criminal, and the State has presented all [its] evidence and rested . . . . [I]f it wasn't for your letter, that's kind of like tipping the prosecutor off to run back to the files and go search for more evidence . . . .

An uncounseled conviction by plea is not admissible to enhance a defendant's sentence absent a showing on the face of the conviction that the defendant knowingly, intelligently, and voluntarily waived counsel. See *State v. Ristau,* 245 Neb. 52, 511 N.W.2d 83 (1994). Absent such proof, it is plain error to use such a conviction to enhance a defendant's sentence. *Id.* On September 29, 1998, Judge Merritt indicated on the record that he had reviewed the evidence of Gray's no contest plea conviction, and felt that "there was no showing that Mr. Gray had knowingly and intelligently waived his right to counsel."

The issues are whether Judge Merritt abused his discretion by informing the State of his concerns about the sufficiency of the evidence or by allowing the State a second opportunity to prove the habitual criminal allegations after it had rested. Inherent in these issues is an examination of the nature and extent of the State's burden of proof.

We start with the general principle that in a criminal action, the State must prove all of the essential elements of the offense charged beyond any reasonable doubt. See *Yost v. State,* 149 Neb. 584, 31 N.W.2d 538 (1948). And while being a habitual criminal is not a separate offense, *State v. Rolling,* 218 Neb. 51, 352 N.W.2d 175 (1984), the State nonetheless bears the burden of proving that enhancement is proper. In *State v. Brooks,*

5 Neb. App. 5, 12, 554 N.W.2d 168, 174 (1996), citing *State v. Orduna*, 250 Neb. 602, 550 N.W.2d 356 (1996), we addressed the State's burden of proof during enhancement proceedings:

In a proceeding for an enhanced penalty, the State has the burden to show that the record of a defendant's prior conviction, based on a plea of guilty, affirmatively demonstrates that the defendant was represented by counsel, or that the defendant, having been informed of the right to counsel, voluntarily, intelligently, and knowingly waived that right.

With respect to the level of proof, a checklist docket entry is sufficient to establish that a defendant has been advised of his or her rights and has waived them. *Orduna, supra.* A checklist or other such docket entry which is made by one authorized to make it imports verity, and unless contradicted, it stands as a true record of the event. *Id.* See, *State v. Reimers*, 242 Neb. 704, 496 N.W.2d 518 (1993); *State v. Nowicki*, 239 Neb. 130, 474 N.W.2d 478 (1991).

In *Reimers*, 242 Neb. at 710-11, 496 N.W.2d at 523, the Supreme Court stated:

Consequently, in a proceeding for an enhanced penalty, when the record of a defendant's prior conviction, based on the defendant's plea of guilty, does not affirmatively show that the defendant was represented by counsel, or that the defendant, having been informed of the right to counsel, did voluntarily, intelligently, and knowingly waive that right, the State has the burden to prove the constitutional validity of the defendant's prior plea-based conviction in relation to the defendant's right to counsel before the State may use the prior plea-based conviction for an enhanced penalty. Cf. *Parke v. Raley*, [506] U.S. [20], 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992) (consistent with due process, a state may fashion and prescribe a procedure to determine the constitutional validity of a prior plea-based conviction used for the purpose of enhancement).

A good number of other decisions clearly impose the burden of proof on the State to show the validity of the prior plea-based conviction. See, *Reimers, supra*; *State v. Smith*, 213 Neb. 446, 329 N.W.2d 564 (1983); *State v. Jackson*, 4 Neb. App.

413, 544 N.W.2d 379 (1996); *State v. Watkins*, 4 Neb. App. 356, 543 N.W.2d 470 (1996). In *State v. Ristau*, 245 Neb. 52, 511 N.W.2d 83 (1994), the court also held that it was plain error to use a plea-based conviction for enhancement when the record does not contain proof that the defendant had counsel or knowingly waived counsel.

These decisions teach that the State has the burden not only to prove the prior convictions for enhancement, but also to prove that any plea-based conviction was obtained when the defendant was either represented by counsel or had knowingly, intelligently, and voluntarily waived his or her right to counsel. And, it is plain error to enhance a defendant's sentence based on convictions when it is not shown that the defendant had counsel or knowingly waived such right.

### (b) Sufficiency of Evidence for Enhancement

We next consider whether the State's evidence, exhibits 27 and 40, offered during the September 22, 1998, enhancement hearing, meet the State's burden of proof with respect to enhancement of the forgery charge. Judge Merritt concluded that "there was no showing that Mr. Gray had knowingly and intelligently waived his right to counsel" during his no contest plea conviction.

As we noted above, exhibit 26 sufficiently proves one of the two requisite convictions for enhancement purposes under § 29-2221 and is not at issue in this case. The issue is whether exhibits 27 and 40 show that Gray had or waived his right to counsel when he pled no contest leading to his conviction for forgery. Exhibit 40 shows that Gray was acting as his own counsel at the time of the plea, with standby counsel present with him.

An accused has a state and federal constitutional right to be represented by an attorney in all critical stages of a criminal prosecution which can lead to a sentence of confinement. See, U.S. Const. amend. VI and XIV; Neb. Const. art. I, § 11; *Scott v. Illinois*, 440 U.S. 367, 99 S. Ct. 1158, 59 L. Ed. 2d 383 (1979). The Sixth Amendment to the U.S. Constitution also guarantees a criminal defendant the right to represent himself or herself. *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). The right to self-representation does not

attach until it is asserted "clearly and unequivocally." 422 U.S. at 835.

In order to exercise the right of self-representation, a defendant must first make a knowing and intelligent waiver of the right to counsel. *Faretta, supra*; *State v. Dodson*, 250 Neb. 584, 550 N.W.2d 347 (1996), *overruled on other grounds, State v. Paul*, 256 Neb. 669, 592 N.W.2d 148 (1999); *State v. Green*, 238 Neb. 328, 470 N.W.2d 736 (1991); *State v. Jost*, 219 Neb. 162, 361 N.W.2d 526 (1985). *Dodson*, 250 Neb. at 590, 550 N.W.2d at 352, describes a defendant's decision to plead guilty or no contest as a "grave and personal judgment, which a defendant should not be allowed to enter without full comprehension of his constitutional rights." A defendant contemplating self-representation "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835, quoting *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 63 S. Ct. 236, 87 L. Ed. 268 (1942). The key inquiry is whether the defendant was sufficiently aware of the right to have counsel and of the possible consequences of a decision to forgo the aid of counsel. *State v. Wilson*, 252 Neb. 637, 564 N.W.2d 241 (1997). A knowing and intelligent waiver can be inferred from conduct. Consideration may also be given to a defendant's familiarity with the criminal justice system. *Meyer v. Sargent*, 854 F.2d 1110 (8th Cir. 1988); *Green, supra*. The waiver of constitutional rights must be done with sufficient awareness of the relevant circumstances and likely consequences. *Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). The Nebraska Supreme Court has said that a "trial court should warn a defendant who has the right to counsel of the dangers and disadvantages of self-representation, but that the warning is not required." *Green*, 238 Neb. at 335, 470 N.W.2d at 744.

*Faretta, supra*, establishes that Gray has either the right to counsel or the right to represent himself, but not both. During the plea at issue, Gray had the assistance of standby counsel. While exhibits 27 and 40 show that Gray was acting pro se, they do not establish that Gray knowingly, intelligently, and voluntarily waived his right to counsel and chose self-representation.

The State does not argue that exhibits 27 and 40 make such a showing. In fact, Judge Merritt's reason for allowing the State to withdraw its rest and adduce additional evidence was that he was convinced the State had not shown that Gray had effectively waived his right to counsel when he pled no contest to the prior forgery charge being used for enhancement purposes. This conviction is evidenced by exhibits 27 and 40. We do not disagree with Judge Merritt's conclusion that exhibits 27 and 40 fail on their face to prove that Gray knowingly, intelligently, and voluntarily waived counsel during his no contest plea conviction.

But, we must consider the significance of the fact that Gray had standby counsel, whom he consulted twice during the plea proceedings and one of these consultations required a 12-minute recess. It is well settled that the Sixth Amendment means that a defendant is entitled to be represented by counsel at all critical stages of a criminal proceeding against the defendant, and critical stages are those stages at which the substantial rights of a defendant may be affected. *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). The right to be represented by counsel is a fundamental component of our criminal justice system. *Id.* See, e.g., *Mempa v. Rhay*, 389 U.S. 128, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967); *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963).

The question, apparently of first impression in Nebraska, is whether the presence of standby counsel when Gray's plea was entered satisfies the requirements of the Sixth Amendment, but whether Gray sustained prejudice does not appear to be part of the analysis. See *United States v. Cronic*, 466 U.S. at 659 n.25 ("[t]he Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding").

Nebraska has not addressed directly the question of whether standby counsel is "counsel" within the meaning of the Sixth Amendment. *U.S. v. Taylor*, 933 F.2d 307 (5th Cir. 1991), *cert. denied* 502 U.S. 883, 112 S. Ct. 235, 116 L. Ed. 2d 191, appears to be the leading case. The circuit court reasoned:

Given the limited role that a standby attorney plays, we think it clear that the assistance of standby counsel, no

matter how useful to the court or the defendant, cannot qualify as the assistance of counsel required by the Sixth Amendment. There can be no question that the roles of standby counsel and full-fledged defense counsel are fundamentally different. The very definition of full-fledged counsel includes the proposition that the counselor, and not the accused, bears the responsibility for the defense; by contrast, the key limitation on standby counsel is that such counsel *not be responsible*—and not be perceived to be responsible—for the accused's defense. Indeed, in many respects, standby counsel is not counsel at all, at least not as that term is used in the Sixth Amendment.

The Supreme Court has held that while the appointment of standby counsel can be a very useful step in a case in which a defendant wishes to represent himself, the proper role of standby counsel is quite limited. *McKaskle v. Wiggins*, 465 U.S. 168, 177-78, 104 S.Ct. 944, 950-51, 79 L.Ed.2d 122 (1984). The defendant preserves actual control over the case he presents to the jury: standby counsel cannot substantially interfere with any significant tactical decisions, cannot control the questioning of witnesses, and cannot speak in place of the defendant on any matter of importance. *Id.* Standby "counsel" is thus quite different from regular counsel. Standby counsel does not *represent* the defendant. The defendant represents himself, and may or may not seek or heed the advice of the attorney standing by. As such, the role of standby counsel is more akin to that of an observer, an attorney who attends the trial or other proceeding and who may offer advice, but who does not speak for the defendant or bear responsibility for his defense.

*Taylor*, 933 F.2d at 312-13.

■ *Taylor* is a well-reasoned and logical opinion, and we could not articulate the key concepts quoted above any better. Thus, we adopt its holding to the extent that when the evidence of the prior plea-based conviction offered for enhancement shows the presence of standby counsel, without also establishing a knowing and voluntary waiver of the right to counsel, then the State has not satisfied its burden to show that the defendant

had or waived counsel. Therefore, the evidence failed to show that Gray had or waived counsel at the time of his plea to the prior forgery charge. Consequently, his conviction as evidenced by exhibits 27 and 40 is insufficient to support a habitual criminal enhancement finding.

Therefore, when the State rested, its evidence was insufficient to prove that Gray was a habitual criminal. The problem is that while Judge Merritt recognized the insufficiency of the State's evidence, he departed from his role as neutral fact finder. The judge informed the State by letter of the insufficiency of its evidence and then allowed the State to withdraw its rest, over Gray's objection, to adduce additional evidence to support the State's charge that Gray should be sentenced as a habitual criminal. The fact that Gray did not object to the evidence on such grounds is of little moment because he is obviously entitled to rely on the argument that the State's proof is simply insufficient to prove what it needs to prove.

In *Jim's, Inc. v. Willman*, 247 Neb. 430, 527 N.W.2d 626 (1995), the suggestion by a trial judge that a second motion for summary judgment be filed, which the judge heard and ruled on, was found to be reversible error. The Supreme Court there said:

> We recognize that in an effort to expedite litigation, a trial judge may on occasion hasten the process along by suggesting to one party that he or she will favorably entertain a particular pleading. Nevertheless, that practice is to be discouraged. A judge must be impartial, his or her official conduct must be free from even the appearance of impropriety, and a judge's undue interference in a trial may tend to prevent the proper presentation of the cause of action. . . . A judge must be careful not to appear to act in the dual capacity of judge and advocate. *State v. Brown*, 124 Ariz. 97, 602 P.2d 478 (1979).

*Jim's, Inc.*, 247 Neb. at 434, 527 N.W.2d at 630. See, also, *Quercia v. United States*, 289 U.S. 466, 53 S. Ct. 698, 77 L. Ed. 1321 (1933); *United States v. Araujo*, 539 F.2d 287 (2d Cir. 1976); *United States v. Carter*, 528 F.2d 844 (8th Cir. 1975), *cert. denied* 425 U.S. 961, 96 S. Ct. 1745, 48 L. Ed. 2d 206 (1976); *United States v. Natale*, 526 F.2d 1160 (2d Cir. 1975), *cert. denied* 425 U.S. 950, 96 S. Ct. 1724, 48 L. Ed. 2d 193 (1976); *State v. Brown*, 124 Ariz. 97, 602 P.2d 478 (1979).

If the trial judge's conduct was reversible error in *Jim's, Inc.,* *supra,* as it was held to be, we believe that the conduct of Judge Merritt here also must be reversible error. In the instant case, the court did more than suggest a pleading. Instead, he assessed the State's evidence, found it insufficient, advised the State of the insufficiency, and then over objection allowed the State to put in more evidence to attempt to plug the gaps in its proof. Regardless of the judge's intention, we cannot avoid the conclusion that the judge assisted the State, which compromised his duty to be impartial. In reaching this conclusion, we have examined similar cases from other jurisdictions.

In *People v. Adler,* 629 P.2d 569 (Colo. 1981), the issue was whether the value of the property involved, a stereo, exceeded $200. A police officer testified that while undercover, he purchased the stereo for $234 from another police officer. The trial court questioned whether that was sufficient to establish the value of the stereo, and as a result, the prosecution called another witness to testify on the value. The Colorado court said that whether the prosecution should be granted leave for the late endorsement of another witness was a matter of discretion, but the more troublesome question was the defendant's objection to the conduct of the trial judge in allowing the prosecution's new witness to be endorsed.

In *Adler, supra,* comments from both counsel and the trial judge reflected that during the discussion off the record, out of the jury's presence, the trial judge had indicated that the prosecution might not have produced sufficient evidence of the value to establish a prima facie case. The judge apparently suggested that another witness be called to establish the value. The prosecution heeded this suggestion and obtained a witness on the issue during the noon recess. The Colorado court looked to I ABA Standards for Criminal Justice 6-1.1(a) (2d ed. 1980), which provides:

> The adversary nature of the proceedings does not relieve the trial judge of the obligation of raising on his or her initiative, at all appropriate times and in an appropriate manner, matters which may significantly promote a just determination of the trial. The only purpose of a criminal trial is to determine whether the prosecution has established the guilt of the accused as required by law[.]

*Id.* at 6.6. The court in *Adler* then referenced the commentary to that standard:

> [I]t is appropriate for the trial judge from time to time to intervene in the conduct of a case. Thus, when it clearly appears to the judge that for one reason or another the case is not being presented intelligibly to the jury, the judge is not required to remain silent. On the contrary, the judge may, by questions to a witness, elicit relevant and important facts. The judge may interrogate a witness after a cross-examination that appears to be misleading to the jury. The judge may also give interim explanations to the jury of the procedure of the trial . . . . The judge should be aware that there may be a greater risk of prejudice from overintervention than from underintervention. While the judge should not hesitate to exercise authority when necessary, the judge should avoid trying the case for the lawyers.

6-1.1(a) at 6.7 to 6.8.

Nonetheless, the *Adler* court was quick to point out that when a trial judge elects to raise matters to promote a just determination of a trial, he must take great care to ensure that he does not become an advocate, citing *People v. Martinez*, 185 Colo. 187, 523 P.2d 120 (1974) (reversible error is committed where, in absence of prosecutor at hearing on motion to suppress evidence, trial judge called witnesses, presented evidence, cross-examined defense witnesses, objected to defense counsel's questions, and ruled on defense counsel's objections to court's questions of witnesses). The test adopted by the Colorado court was whether the trial judge's conduct so departed from the required impartiality as to deny the defendant a fair trial. See *People v. Corbett*, 199 Colo. 490, 611 P.2d 965 (1980). In *People v. Adler*, 629 P.2d 569 (Colo. 1981), the court concluded that although pointing out a possible defect in the prosecution's case may have been ill advised, it was held that such conduct did not result in a breach of that test.

Significantly, in *Adler*, the prosecution had not rested its case. The trial judge's suggestions to the prosecution were made out of the presence of the jury. The jury was not told that the additional witness for the prosecution appeared at the judge's sug-

gestion. The *Adler* court also said that the trial record reflected the judge's otherwise careful and impartial attention to the rights of both parties throughout the trial. Also, when the prosecution's new witness was permitted to testify, the judge told the defendant that he would be granted a continuance, if desired, so that he could seek to obtain evidence to refute the new evidence of the stereo's value. The conclusion was that these factors tended to establish that the defendant was not deprived of his substantial rights by the trial judge's conduct. The Colorado Supreme Court was quick to point out that while there was no reversible error, it did not approve of the judge's decision to call the prosecutor's attention to the possible evidentiary weakness in his case. For additional cases which do not find reversible error, but where the suggestion was made prior to the State's rest, see, *Corbett, supra*; *People v. Walter*, 90 Ill. App. 3d 687, 413 N.E.2d 542, 46 Ill. Dec. 102 (1980) (trial court suggested to prosecutor, out of presence of jury, need to establish venue and identity of defendant); *State v. Johnson*, 454 S.W.2d 27 (Mo. 1970) (in trial for stealing, trial judge suggested to prosecutor, out of hearing of jury, that he elicit testimony as to ownership of items taken and legal nature of owner company); *State v. Roddy*, 604 S.W.2d 32 (Mo. App. 1980) (in trial for operating motor vehicle without consent of owner, trial judge suggested to prosecutor, out of hearing of jury, that he ask witness police officer if he saw who was driving car).

In contrast to the foregoing authority, in the case before us, Judge Merritt became an advocate for the State's need to put in more and better evidence, rather than simply deciding whether the evidence adduced by the State, which had rested, established that Gray was a habitual criminal, which it did not do, as we have said and as Judge Merritt knew. Thus, in the final analysis, Judge Merritt erred in allowing the State to withdraw its rest and adduce additional evidence to prove that Gray was a habitual criminal, given that the State had failed to prove its case and had rested by indicating on the record that it had no further evidence. As a result, we do not consider any evidence adduced by the State after it was wrongfully allowed to withdraw its rest. The evidence introduced prior to the State's rest did not prove Gray a habitual criminal because of the shortcomings we have previously outlined.

### (c) Jail Assault Enhancement

The State introduced no evidence for enhancement purposes in the jail assault case during the September 22, 1998, enhancement hearing, except that in this case, exhibits 2 and 3 were already in the record as were copies of exhibits 26 and 27 from the forgery case. They were not offered for purposes of enhancement, but, rather, for proof of prior crimes or bad acts. As held above, the evidence adduced at the enhancement hearing on September 22 on the forgery conviction was insufficient to prove Gray a habitual criminal. We have held that allowing the State to later adduce additional evidence was error. The State relied upon that additional evidence introduced on October 29 to support the habitual criminal allegation in the jail assault case. It is no better here than in the forgery case.

The impartiality of judges is the cornerstone of our judicial system, and it provides the necessary credibility for the judicial system to resolve the cases before it. That notion is plainly evident in the Supreme Court's opinion in *Jim's, Inc. v. Willman,* 247 Neb. 430, 527 N.W.2d 626 (1995), a case upon which we substantially rely in our reversal of the sentence enhancement in the forgery and courtroom assault cases involving Gray. Consequently, the 10- to 20-year sentences in both the forgery case and the jail assault case are vacated, and the causes are remanded for resentencing, without use of the habitual criminal statute, for the reasons which we shall discuss in the section of our opinion entitled "Resentencing."

### (d) Courtroom Assault Enhancement

Finally, we must address whether Judge Merritt's actions have any effect on Judge Flowers' determination that Gray was a habitual criminal in the courtroom assault case and her sentence of him as a habitual criminal. We have affirmed that underlying conviction in our not designated for permanent publication opinion released this day, but write about that case in further detail because of the unusual circumstances which impact the outcome and may provide guidance for the future. In the enhancement hearing before Judge Flowers in the courtroom assault case on August 21, 1998, the State offered the same three exhibits in support of its habitual criminal allegation as it later

did in the cases before Judge Merritt. Judge Flowers entered an order finding that Gray was a habitual criminal on August 25. As held above, these exhibits failed to carry the State's burden to show that Gray had counsel or waived counsel during his no contest plea conviction. Thus, Judge Flowers' use of such evidence to find Gray a habitual criminal would have been reversible plain error under *State v. Ristau*, 245 Neb. 52, 511 N.W.2d 83 (1994). However, before any appeal to this court was taken, Judge Flowers vacated her order and took new evidence in the joint hearing held with Judge Merritt.

The decision to vacate an order is within the discretion of the court, and such a decision will be reversed only if it is shown that the district court abused its discretion. *Jarrett v. Eichler*, 244 Neb. 310, 506 N.W.2d 682 (1993). An abuse of discretion occurs when the trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Talkington v. Womens Servs.*, 256 Neb. 2, 588 N.W.2d 790 (1999).

As indicated above, Judge Merritt informed Judge Flowers about the insufficiency of the State's evidence sometime after the September 22, 1998, enhancement hearing for the two cases before him. Judge Flowers then vacated her prior order of August 25, which found Gray to be a habitual criminal, and then allowed the State to withdraw its rest in the case before her and present further evidence at the consolidated enhancement hearing before both judges on October 29. Because the State's initial evidence was insufficient to support the habitual criminal allegation, Judge Flowers properly vacated her previous order, putting aside the issue of how she came to act. However, rather than allowing the State a second opportunity to prove its case, Judge Flowers should have simply found that the State had failed to meet its burden on the habitual criminal allegation. Judge Flowers erred by allowing the State a second chance at proving its case, particularly because the State's new evidence at the new hearing, which ultimately became the basis for her second enhancement of Gray's sentence, flowed directly from Judge Merritt's undue involvement with the State's case.

Had Judge Merritt not involved himself in Judge Flowers' case, we suspect the natural order of events would have been an

appeal to this court and a finding under *Ristau, supra,* that the evidence was insufficient. However, on the record before us, the taint from Judge Merritt's actions infects the proceedings conducted by Judge Flowers. The joint hearing conducted by Judges Merritt and Flowers, after they allowed the State to withdraw its rest to buttress its case, cannot save the State from the fact that it rested when its proof was insufficient to prove its habitual criminal allegation. Therefore, in our opinion in the courtroom assault case, we have reversed the finding of Judge Flowers that Gray is a habitual criminal and have remanded that cause for resentencing also.

## 5. RESENTENCING

Because the State failed to meet its burden to prove Gray was a habitual criminal, the sentences imposed in each of these three cases must be vacated and the causes remanded for resentencing. Our remand for resentencing presents the question of whether the State can be afforded another opportunity to prove Gray is a habitual criminal. We should answer that question in order to provide clear direction to the trial court. The answer is found in *Lockhart v. Nelson,* 488 U.S. 33, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988), and *Burks v. United States,* 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978).

*Nelson* involved an Arkansas habitual criminal statute which required that the State prove four prior felony convictions for sentence enhancement. The issue presented was whether double jeopardy allowed a habitual criminal rehearing after an appellate court reversed a habitual criminal determination because some of the evidence against the defendant was erroneously admitted. In *Nelson,* without such erroneously admitted evidence, the record was insufficient to support a habitual criminal conviction. The majority concluded:

> [I]n cases such as this, where the evidence offered by the State and admitted by the trial court—whether erroneously or not—would have been sufficient to sustain [a determination that the defendant was a habitual offender], the Double Jeopardy Clause does not preclude retrial [on the question of whether the defendant is a habitual criminal even though the remaining evidence adduced at trial was legally insufficient to support the determination].

*Nelson*, 488 U.S. at 34. The Court's rationale came from the general rule that "the Double Jeopardy Clause does not bar the retrial of a defendant who has succeeded in getting his conviction set aside for error in the proceedings below." *Nelson*, 488 U.S. at 39.

The Supreme Court in *Nelson* recognized that there was an exception to the general rule which it was using and that such exception was found in *Burks, supra.* The *Nelson* Court said of *Burks*: "*Burks* held that when a defendant's conviction is reversed by an appellate court on the sole ground that the evidence was insufficient to sustain the jury's verdict, the Double Jeopardy Clause bars a retrial on the same charge." 488 U.S. at 39. The *Nelson* Court determined that the circumstances it faced were governed by the general rule and not by the *Burks* exception.

The cases before us do not fall within the exception to the double jeopardy prohibition found within *Nelson* where the evidence, whether rightly or wrongly admitted, is sufficient to sustain the conviction or enhancement. This case does not involve a situation where either Judge Merritt or Judge Flowers *initially erroneously* admitted evidence which was legally sufficient to show that Gray was a habitual criminal. Rather, as Judge Merritt concluded, the evidence adduced prior to October 29, 1998, was not sufficient to prove the habitual criminal allegation. We have also made an independent determination that the evidence adduced by the State to show that Gray was a habitual criminal prior to being allowed to withdraw its rest was insufficient.

While we have found error in the trial court's assistance to the State and the allowance of a new opportunity to present evidence, the key here is that the initially introduced evidence did not prove that Gray's plea-based conviction was with knowing and voluntary waiver of counsel. Because there never was evidence, whether properly or erroneously admitted, sufficient to sustain a determination that Gray was a habitual criminal, the holding in *Lockhart v. Nelson*, 488 U.S. 33, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988), permitting a rehearing is not applicable. Instead, the exception in *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978), of no retrial when the evidence is insufficient applies.

Thus, on remand, the State is prohibited from attempting to resentence Gray as a habitual criminal because jeopardy has

attached, and the evidence adduced against him, being insufficient, equates to an acquittal of the allegation that he is a habitual criminal. There are cases from other jurisdictions which support our holding. See, *Bowman v. State*, 314 Md. 725, 552 A.2d 1303 (1989) (analyzing *Nelson* and *Burks* and finding that insufficiency of habitual criminal evidence invokes Double Jeopardy Clause); *State v. Hennings*, 100 Wash. 2d 379, 670 P.2d 256 (1983), citing *Tibbs v. Florida*, 457 U.S. 31, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982) (where court, trial or appellate, determines that evidence is insufficient to support guilty verdict or habitual criminal findings, Double Jeopardy Clause prevents giving State another opportunity to prove its case). See, also, *Carter v. State*, 676 S.W.2d 353 (Tex. Crim. App. 1984) (double jeopardy bars subsequent enhancement hearing where prosecution previously failed to produce sufficient habitual criminal evidence); *State v. Bowman*, 36 Wash. App. 798, 678 P.2d 1273 (1984). Compare *Duffel v. Dutton*, 785 F.2d 131 (6th Cir. 1986) (second hearing not prohibited by double jeopardy where trial court erroneously excluded prosecution's proffered evidence making presentation of sufficient evidence impossible).

## V. CONCLUSION

Therefore, in this case, the forgery conviction, we vacate the finding that Gray was a habitual criminal and also vacate the sentence previously imposed. We have done the same in our not designated for permanent publication opinions in each of the other two cases, courtroom assault and jail assault. Because jeopardy has attached with respect to the State's charge that Gray was a habitual criminal in each of the three separately charged felonies with which we have dealt today, Gray can only be resentenced for the three crimes, which convictions we have affirmed in the three opinions we have released today, without any enhancement as a habitual criminal. We remand the forgery conviction for resentencing in accordance with this opinion.

SENTENCE VACATED, AND CAUSE
REMANDED FOR RESENTENCING.